# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DEMETRIUS JERMAINE WADE,** ) | |
| Petitioner, ) | |
| ) | Civil Action No. 7:19-cv-00763 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| **HAROLD CLARKE, DIRECTOR,** ) | United States District Judge |
| Respondent. ) | |

## MEMORANDUM OPINION

Petitioner Demetrius Jermaine Wade, a Virginia inmate proceeding *pro se*, filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his incarceration under Roanoke City Circuit Court criminal judgments entered June 24, 2016, sentencing him to 88 years in prison, with 40 of those years suspended, for two counts of second-degree felony murder and two counts of using a firearm in the commission of murder (Case Nos. CR15-393 through 396). Respondent has filed a motion to dismiss the petition, arguing that the habeas decision from the Supreme Court of Virginia is neither contrary to nor an unreasonable application of federal law, nor does the decision involve an unreasonable determination of facts. After careful review of Wade's petition, his response to the motion to dismiss, and the entire record of proceedings in the state court, the court concludes that the state habeas decision is not contrary to federal law, nor does the decision involve an unreasonable application of law or an unreasonable determination of facts. Therefore, the court must grant the motion to dismiss and will deny a certificate of appealability.

I.  BACKGROUND

A. **Factual Background**

At the plea hearing on February 22, 2016, the Commonwealth proffered a summary of the following facts:  On January 4, 2015, Roanoke City police officers responded to a shooting at 3626 Shenandoah Road in Roanoke.  When the police arrived, they discovered that two people, Ronald Ramey and Leonard Hamlett, had been shot and killed.  Four others had been injured by gunfire: Jamar James, Nelson Sanders, Kente Gilkes, and John English.  The building, normally operated as a business, was operating (unlawfully) as a nightclub that evening, with music playing, patrons consuming alcohol, and dim lighting.  Estimates of the number of patrons inside the 400 square-foot establishment ranged from 20 to 50 people when the shooting began.  Very few people saw what happened, and those who knew anything were not telling the police.

Later that evening, victim John English arrived at Roanoke Memorial Hospital for treatment of his gunshot wound.  He arrived in a van driven by Cecily Manns, the girlfriend of Chris Cabbler.  Manns, Cabbler, Wade, and English all arrived in the van.  Surveillance video from the hospital parking deck showed Cabbler dropping something—which turned out to be a .45-caliber magazine clip—into a potted plant outside the emergency room.  Based upon finding the magazine clip and viewing the video surveillance, police obtained a search warrant for the van.  Inside the van, police found a Ruger 9mm gun and a Glock .45-caliber handgun, $4000.00 in cash, and ammunition.  Investigators forwarded the two guns to the Department of Forensic Science, along with 13 shell casings found at the scene and several bullet fragments pulled from the two decedents and three of the four live gunshot victims.  The lab certified that seven of the shell casings from the scene had been fired from the Ruger and six of the casings had been fired from the Glock.  All bullet fragments from the victims, however, were from the Ruger.

Victim Kente Gilkes gave a statement that he was standing beside Wade when the shooting started. He saw Wade with a gun in his hand and saw Wade shoot at Leonard Hamlett. On March 2, 2015, the grand jury direct indicted Cabbler and Wade for two counts of second-degree felony murder for death resulting from firing a weapon inside an occupied building, in violation of Virginia Code §§ 18.2-33 and 18.2-279, and two counts of using a firearm in the commission of murder, in violation of Virginia Code § 18.2-53.1.

The attorneys for Cabbler and Wade were originally working together on a joint defense, but two weeks before the matter was scheduled for trial in November 2015, Cabbler decided to cooperate with the police, stating that he had arrived at the club with Wade that evening. When the shooting started, he panicked and fired his gun into the ceiling as he tried to clear a path to get out of the building. As he got to the entrance, he fired into the air three more times. Bullet holes in the ceiling and in the overhang over the entrance were consistent with Cabbler's description of his shots.

Cabbler and Wade travelled to Charlotte, North Carolina, to stay for a few days after the shooting. They stayed at the home of a friend who overheard some of their conversations and became concerned. Using her cell phone and without Wade's knowledge, she recorded some of the conversations. In those cryptic conversations, Wade appeared to take responsibility for the shootings (according to Cabbler and the friend's interpretation). Among statements in the recording attributed to Wade were "Cause at the end of the day, I am not going to let you ride for something I done." CCR[1] at 494. The Commonwealth's summary of what the evidence would have been further indicated that Cabbler and the friend from North Carolina would have testified

---

[1] Citations herein are to the electronically filed record from Roanoke Circuit Court, Record Nos. CR15000393 through CR15000396, abbreviated "CCR," using the typed page numbers at the bottom right corner of each page.

3

that the gist of Wade's statements were that someone had hit him in the back of the head and no one would tell him who had done it. He got angry and began firing. The Commonwealth also admitted that the recording was poor and difficult to hear and understand; the authenticity of the recording and the accuracy of the government's transcription would have been issues in the case.[2] The transcript of portions of the recordings were introduced as Commonwealth's Exhibit 2. CCR at 551–557. Autopsy reports for Ramey and Hamlett were also introduced into the record under seal. Wade listened to the Commonwealth summarize the above evidence and agreed that this is the evidence the Commonwealth would have introduced. CCR at 491-500.

**B. Procedural History**

Following the indictments issued by the grand jury on March 2, 2015, Wade was arrested on March 4, 2015, and held without bond. The Public Defender's Office for the City of Roanoke was initially appointed, but it withdrew from the case on March 10, as the office already represented another defendant in the matter. New counsel was appointed.

In April 2015, the grand jury issued additional indictments against Wade for four charges of malicious wounding, four charges for use of a firearm in malicious wounding, and two charges of discharging a firearm in an occupied building. In May, the Commonwealth advised Wade's attorney that additional indictments were coming from the grand jury at the beginning of June. On May 28, 2015, counsel argued a motion to continue the trial date, based in part on the forthcoming additional indictments. The court granted the continuance and waived the time between trial dates, as provided by the Virginia speedy trial statute, Virginia Code § 19.2-243. Wade was present with his counsel at the hearing and made no objection. CCR at 389-391. The

---

[2] From reading the transcripts of the recordings, the court agrees that interpreting the details would have been challenging without assistance.

following week, indictments issued for two counts of first-degree murder and two counts of felon in possession of a firearm.

Just over two weeks before the scheduled trial date of November 16, 2015, Wade's codefendant, Cabbler, decided to take a plea agreement and cooperate with the Commonwealth. As a direct result of that cooperation, the Commonwealth came into possession of the alleged conversations between Wade and Cabbler that had been recorded in Charlotte, North Carolina. A transcript of the recording was provided to the defense for the first time, and counsel sought another continuance to prepare for the changed circumstances. Wade was present with counsel at the continuance hearing on November 10, 2015, and again, raised no objection to the continuance. CCR at 394-399.

In December 2015, Wade alleges that counsel came to the jail to prepare for a pretrial hearing, review his trial rights, and recommend a proposed plea agreement under which Wade would plead guilty to two counts of second-degree felony murder and two counts of using a firearm in the commission of a felony. Further, the proposed agreement stipulated that the court would determine the sentence, which would be not less than 20 years and not more than 35 years. Wade was not happy with this turn of events and did not want the plea. Counsel asked him to sign a statement that counsel had communicated the plea offer to him, but that he still wanted to go to trial. Wade refused to sign the document. The next day at the court, counsel came into the lockup and again asked Wade to sign an acknowledgment of the plea offer and his attorney's advice. Wade did not feel that counsel was looking out for his interests at that point. The document discussing the plea offer and the pending charges said that Wade had 20 felonies and was facing a maximum of life in prison on four of the charges. Because he had only 18 charges, he felt that counsel was not familiar with his case. He also felt that the transcript of the

conversations was "not right," and that the evidence should not be admitted because no one ever told him he was being recorded. He did not understand how he could have four murder charges when only two people were dead. He felt like his lawyer was conspiring against him with Cabbler's lawyer, and he refused to sign the document acknowledging his trial rights. (Pet. at 25-28, Dkt. No. 1; Pet's Ex. 9 and Ex. 10, Dkt. No. 1-1 at 9-12.)

Wade wrote a letter to the trial court complaining about his attorney in great detail and asking for another attorney. (Pet's Ex. 11, Dkt. No. 1-1 at 13-16.) The court forwarded the letter to counsel, who then scheduled a hearing on the motion to withdraw. CCR at 101-102. At the scheduled hearing, counsel advised the court:

> Judge, Mr. Wade and I have had some—some difficulties and I believe—believe those are contained in the Court file, but those are—are part of the record. And I would ask the Court eventually to consider those, if the case need be. But, right now and what I would like to address presently is I would ask leave of the Court to file a—a Motion to Suppress a particular piece of evidence we anticipate the Commonwealth having in this cause, should this case go forward.

CCR at 407. The trial court granted the motion for leave, directing counsel to file the motion by the close of business on Monday and scheduling the hearing on the motion for Wednesday, January 20, 2016. Nothing further was said about the motion to withdraw.

Counsel then filed a motion to suppress the alleged recording of conversations between Wade and Cabbler in Charlotte, North Carolina. The trial court did not suppress the recording because there was no governmental action that violated Wade's rights. Nor did the court make a final ruling on the recording's admissibility, noting that a proper evidentiary foundation would need to be laid before he could rule on the non-constitutional grounds. CCR at 413–417. Counsel had also filed a motion to sever the felon in possession of firearm charges from the trial on the remaining charges, but that matter was deferred until January 26, 2016.

On February 22, 2016, all parties appeared for trial. The Commonwealth moved to nolle prosequi the felon in possession of a firearm charge that occurred in November 2014, and the felon in possession charge that occurred January 4, 2015, simultaneously with the remaining charges, would be determined by the judge, following the jury trial on the remaining 16 charges. The court then arraigned Wade on all 17 indictments. CCR at 424–434. The court went through an entire colloquy with Wade before accepting his pleas of "not guilty" to determine if his pleas were knowing and voluntary; during the colloquy, Wade stated that he was "absolutely" satisfied with his attorney. CCR at 436–443. The court then proceeded with voir dire. A jury was selected and sworn, and then the court took a brief recess. CCR at 484–485.

After the recess, counsel advised the court that the parties had reached a plea agreement during the break. The agreement called for Wade to enter pleas of "no contest" to the two second-degree felony murder charges and to the two associated counts of using a firearm in the commission of murder; the sentence would be left to the court's discretion. The Commonwealth agreed to nolle prosequi the remaining charges. CCR at 485–486. The plea agreement was formalized in writing and signed by Wade, his attorney, and the Commonwealth's Attorney. CCR at 125–126. Wade also completed a written form, acknowledging that he understood his rights, the charges and elements of the charges, the maximum sentence he faced on each charge, and that he was knowingly and voluntarily giving up his trial rights; the form also stated that he was entirely satisfied with his attorney's services. CCR at 548–549. After arraigning Wade again on just the four charges to which he was pleading guilty, the court went through an oral colloquy with Wade before accepting his change of plea. CCR at 486–490. Finally, the court ordered a presentence report and set the matter for a sentencing hearing.

At the sentencing hearing on June 1, 2016, the court considered the presentence report, victim impact statements, and testimony from the daughter and the brother of decedent Ramey and from the mother of decedent Hamlett. After arguments from counsel, the court sentenced Wade to the maximum sentence of 40 years on each count of second-degree felony murder, with 20 years suspended on each count for 10 years of probation, plus the mandatory three year sentence for the first use of a firearm conviction and five years mandatory for the second use of a firearm conviction, all sentences to run consecutively. The total sentence of 88 years, with 40 years suspended, left Wade with 48 years to serve, substantially higher than the 27 years, 11 months recommended by the high end of the sentencing guidelines. CCR at 517–545. The final judgment orders were entered June 24, 2016, with a separate order entered for each of the four convictions. CCR 226–237.

Wade appealed to the Virginia Court of Appeals, challenging the above-guideline sentence and the court's alleged failure to consider mitigating factors, the voluntariness of his plea, the effectiveness of his counsel, and alleged discovery violations by the Commonwealth. By opinion dated December 29, 2016, the Court of Appeals denied the petition for appeal, finding it to be "wholly frivolous." CCR at 274–278. The court denied Wade's petition for rehearing by Order entered February 17, 2017. CCR at 207. The Supreme Court of Virginia refused Wade's petition for appeal on December 6, 2017, and dismissed his petition for rehearing on March 22, 2018. Wade did not petition for certiorari in the United States Supreme Court.

On August 17, 2018, he filed a state petition for habeas corpus in the Supreme Court of Virginia, raising numerous issues, including those raised in his current petition. By opinion dated May 20, 2019, the court dismissed the petition. *Wade v. Clarke*, No. 181078 (Va. May 20, 2019). In his timely filed § 2254 petition, Wade raises the following claims:

8

1. The Commonwealth violated Wade's right to Due Process by withholding the bullet fragments recovered from victim Hamlett's body during autopsy.

2. Ineffective assistance of counsel in the following:

    a. Requesting a continuance and waiving speedy trial rights without Wade's consent;

    b. Failing to exercise due diligence in the investigation and preparation of case by not seeking the recovered bullet fragments that had not been analyzed by the state lab;

    c. Failing to investigate and interpret the forensic ballistic analysis;

    d. Failing to know the correct number and nature of charges that Wade faced during a meeting three months before trial;

    e. Failing to explain the elements of felony murder and that this was a lesser included offense within the first-degree murder charge;

    f. Failing to locate or interview any witnesses, either before trial or before sentencing; and

    g. Failing to arrange for him to listen to the tape of his alleged statements to Cabbler in North Carolina.

3. The trial court committed the following errors:

    a. Not allowing Wade to present his evidence/testimony regarding his conflicts with his trial counsel; and

    b. Failing to ask Wade directly about his waiver of the right to present mitigating evidence to make sure he had been provided enough information to make a knowing decision.

## II. DISCUSSION

### A. Standard of Review and Limitations on Federal Habeas Corpus Relief

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). There is a presumption of correctness that attaches to the state court's finding of facts, which can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e).

A federal district court reviewing a § 2254 petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

### B. Analysis of Claims

#### 1. Wade's alleged Due Process claim

Assuming that Wade might have had a colorable claim that the bullet fragments removed from victim Hamlett were potentially exculpatory, which has not been demonstrated, the right to

exculpatory evidence is a trial right, and when a defendant knowingly and voluntarily gives up the right to a trial, there is no constitutional right to discovery of exculpatory evidence. *United States v. Ruiz*, 536 U.S. 622, 629 (2002). Relying on this precedent, and that a "no contest" plea is tantamount to a plea of guilty for purposes of the case, *Lott v. United States*, 367 U.S. 421, 426 (1961), the state habeas court held that Wade had waived this claim by virtue of his guilty plea. The decision is a reasonable determination of both fact and law; thus, this court cannot grant relief on this claim.

### 2. Ineffective assistance of counsel

When reviewing counsel's performance, courts apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must meet both prongs of the test. Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 689–90. Under *Strickland,* a reviewing court strongly presumes that counsel rendered adequate assistance and that all significant decisions were made in the exercise of reasonable judgment. *Id.* at 690. The *Strickland* standard is "doubly deferential" in the context of a habeas petition because the deferential standard of review required by § 2254 overlaps with the deferential standard under *Strickland*. *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In other words, federal courts on habeas review are to give the benefit of the doubt to both the state court and the defense attorney. *Woods,* 136 S. Ct. at 1151.

To establish prejudice under *Strickland*, a petitioner must show that there was a "reasonable probability that the outcome of the proceedings would have been different," which means "a probability sufficient to undermine confidence in the outcome. 466 U.S. at 694. In the context of pleading guilty or no contest, to prevail on the prejudice prong, a petitioner must show that there is a reasonable probability that he would not have entered the plea and would have insisted on going to trial except for counsel's deficient performance. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). On pre-trial matters having no bearing on the plea decision, in the absence of clear and convincing evidence to the contrary, a petitioner will be bound by statements made under oath in open court regarding his satisfaction with counsel. *Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003).

On federal habeas review, the question is not whether "a federal court believes the state court's determination under the *Strickland* standard was incorrect, but whether that standard was unreasonable—a substantially higher threshold." *Knowles v. Mirazavance*, 556 U.S. 111, 123 (2009). "Surmounting *Strickland's* high bar is never an easy task" but "establishing that a state court's application of *Strickland* is unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter,* 562 U.S. 86, 105 (2011). Based on these standards, the court will analyze Wade's claims of ineffective assistance of counsel.

    *a. Requesting continuance and waiving speedy trial rights without Wade's consent*

The state habeas court held that this claim was barred by Wade's sworn statements of satisfaction with his attorney's services during the colloquy in open court and on the written form attached as an exhibit to his plea agreement. *Wade*, No. 181078, slip op. at 4. Particularly because Wade was present in court both times the matter was continued, with his counsel, and

made no objection to either the continuance or the waiver of statutory speedy trial rights, the state court's factual and legal determinations are reasonable. *See Walton*, 321 F.3d at 62.

### b. *Failing to seek recovery of the bullet fragments not sent to the state lab*

Although the autopsy report noted that "multiple deformed jacket and bullet fragments were recovered" from victim Hamlett (CCR at 558), the Amended Certificate of Analysis from the Department of Forensic Science, dated March 18, 2015, indicated that the lab analyzed only a single bullet jacket from Hamlett. (Pet's Ex. 2, Dkt. No. 1-1 at p. 2.) The state habeas court found that Wade failed to prove prejudice from this claim. *Wade*, slip op. at 5. The lab determined that the deformed jacket came from the Ruger; bullets, jackets, or fragments recovered from both decedents and from three of the four injured persons also came from the Ruger. Cabbler would have testified that he fired the Glock into the ceiling several times, and he was captured on video disposing of a .45 caliber magazine in a potted plant outside the emergency room. Victim Gilkes would have testified that he was standing beside Wade and saw him fire at Hamlett.

Based upon this evidence, especially that the jacket from Hamlett's body came from the Ruger, Wade has failed to show how examining the additional bullet fragments would have had any effect on his decision to plead no contest. He has not offered evidence of what the analysis of the fragments would have revealed, nor how it would alter in any way the inference that at least one bullet in Hamlett's body came from Wade's gun, making him at least jointly culpable for Hamlett's death. In short, he has failed to show any facts that would suggest that he would not have decided to plead "no contest" if the extra fragments had been analyzed. Showing prejudice requires more than petitioner's representation that he would have chosen to go to trial instead of accepting a plea agreement, he must also show that his decision to reject the plea

agreement would have been rational under the circumstances. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). The state habeas court's determination of the facts and application of the law are reasonable, and the court must dismiss this claim.

        *c. Failing to investigate and interpret the forensic ballistic analysis*

In response to this claim, the state habeas court noted that there was no discrepancy between the autopsy report and the forensic lab report; the investigating officer simply chose not to submit unnecessarily duplicative evidence to the lab. Further, the lab report established that items 10 and 33 were microscopically examined by the lab. Because Wade had not demonstrated any value in investigating "a non-existent discrepancy," the state habeas court found that he failed to establish deficient performance. *Wade*, slip op. at 6.

As in the previous subsection, Wade also failed to establish prejudice, because he cannot establish that he reasonably would have chosen not to enter the plea agreement if counsel pursued investigation of the non-existent discrepancy. *Padilla*, 559 U.S. at 372. There is nothing unreasonable about the state habeas court's factual and legal determinations on this claim. Accordingly, the court will dismiss the claim.

        *d. Not knowing the number of charges Wade faced and the proper penalties for each*

The state habeas court found that counsel provided incorrect information to Wade regarding the number of charges currently pending and the number of potential life sentences when they met two months before trial. However, the trial court also found that Wade failed to demonstrate prejudice because this error did not affect the outcome of the plea process. *Wade*, slip op. at 6–7. Wade speculates that the Commonwealth would have been willing to negotiate a more favorable offer that he would have accepted, but the record does not support this

14

speculation. Rather, the offer had been communicated as the best available, to be withdrawn if not accepted by a date certain.

Further, Wade states he might have accepted the plea offer if he had understood the risks he was really facing on his charges. However, it strains credulity to believe that Wade would accept the plea offer to avoid the risk of a maximum possible sentence of two life terms plus 138 years[3] if he was unwilling to accept the plea agreement to avoid the possibility of four life terms plus 138 years. Accordingly, the state habeas court reasonably determined the facts and applied the law to this claim, and the court will dismiss this claim.

> e. *Failing to explain the elements of second-degree felony murder and that Wade could not be convicted of both first-degree murder and second-degree murder of the same person*

Presuming that Wade could establish his allegation that counsel did not explain that he could only be convicted of one homicide per decedent, the state habeas court found that this claim failed to satisfy the prejudice prong of *Strickland*. *Wade*, slip op. at 9. Wade seems to suggest that he would have continued to trial on all 17 remaining indictments had he known he faced two life sentences instead of four. This contradicts the argument Wade made in support of the prior claim, and the argument is irrational. As noted in *Padilla*, a petitioner "must convince the court that a decision to reject a plea bargain would have been rational under the circumstances." 559 U.S. at 372. The state habeas court noted, based on the strength of the

---

[3] Malicious wounding, a class 3 felony, carried a maximum penalty of 20 years. Va. Code §§ 18.2-51 & 18.2-10(c). Use of a firearm in the commission of a violent felony carried a mandatory three-year sentence for the first offense and mandatory five years for each additional conviction. Va. Code § 53.1. Shooting in an occupied dwelling , a class 4 felony, carried a maximum sentence of 10 years for each charge. Va. Code §§ 18.2-279 & 18.2-10(d). Finally, possession of a firearm by a convicted felon, a class 6 felony, carried a maximum penalty of five years for each conviction. Va. Code §§ 18.2-308.2 & 18.2-10(e). Thus, if given the maximum sentence on all four malicious wounding charges, all six charges of using a firearm in the commission of a violent felony, both charges of shooting into an occupied building, and both counts of possessing a firearm after felony conviction, the total consecutive sentence would be 138 years. This would not include any sentence on the murder charges, as the possible life sentences take the worst-case scenario into account for the homicides.

15

evidence and likelihood of conviction on most if not all charges, including two first-degree murders instead of second-degree murders, that rejecting the plea agreement would not be "objectively reasonable in light of all the facts." *United States v. Fugit*, 703 F.3d 48, 260 (4th Cir. 2012). The plea agreement limited Wade's exposure to 88 years, only eight of which were mandatory. Proceeding with a jury trial was taking a chance on two life terms plus 133 years,[4] 28 of which would be mandatory sentences. Further, because juries can neither run sentences consecutively nor suspend a portion of the sentence, *see Harrison v. Commonwealth*, No. 1992-03-1, 2004 WL 2513915, slip op. at 1 (Va. Ct. App. 2004), losing at trial guaranteed 28 years of mandatory time plus a minimum of 15 years more if the jury convicted on second-degree murder or a minimum of 45 years more if convicted of first-degree murder. This court cannot say that the state habeas court unreasonably determined that Wade failed to show that rejecting the plea agreement would have been unreasonable. Therefore, the court will dismiss this claim.

   f. *Failing to locate and interview witnesses*

The state habeas court held that Wade established neither deficient performance nor prejudice on this claim because he failed to provide names of witnesses that counsel did not interview, what the substance of their testimony would have been, and how that would have affected the outcome of the case or sentence. *Wade*, slip op. at 10. Without that information, Wade has not stated a claim of deficient performance, nor has he shown the likelihood of a different outcome. The state court's decision is not an unreasonable determination of fact nor an unreasonable determination or application of existing federal law. The court will dismiss this claim.

---

[4] The number has been reduced by five years because the Commonwealth entered a nolle prosequi on one felon in possession of a firearm charge.

16

> g. *Failing to arrange for Wade to listen to the recording of his conversation with Cabbler in North Carolina*

Although counsel provided Wade a copy of the transcript of the recording made in Charlottesville, North Carolina, on someone's cell phone, Wade alleges that his counsel should have given him an actual copy of the recording. This issue was known to Wade before he chose to enter a plea, and as such, he cannot now complain about it, because such complaint contradicts his sworn colloquy with the court in which he expressed satisfaction with his attorney. As noted previously, a petitioner is bound by statements made under oath in open court regarding his satisfaction with counsel. *Walton*, 321 F.3d at 462. The state habeas court's decision to that effect is entirely consistent with the facts and the law. The court will dismiss this claim.

### 3. Alleged trial court errors

Wade alleges that the trial court erred in failing to ask him what he wanted to tell the court about his conflict with counsel. Further, at sentencing, Wade complains that the court did not ask him personally if he was waiving his right to present mitigating evidence at sentencing. The state habeas court held that both claims are non-jurisdictional matters that Wade could have raised at trial and on direct appeal. *Wade*, slip op. at 11. Because he did not raise those issues at trial and on direct appeal, under well-settled Virginia law, he could not bring them in a habeas petition; habeas cannot be used to circumvent the normal trial and appeal process. *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974).

When the state relies upon an independent and adequate state law procedural ground to dismiss a habeas claim, the federal claim is also procedurally defaulted, unless the petitioner can show cause and prejudice for the default. *Smith v. Murray*, 477 U.S. 527, 533 (1986). The Supreme Court has recognized the rule in *Slayton v. Parrigan* as such an independent and adequate state ground for dismissal. *Id.*

Regarding Wade's complaints about counsel, his initial response to the respondent's motion to dismiss suggests that his default should be excused because he tried to notify the judge, by letter, that he wanted a new attorney. His argument overlooks that this dispute with counsel occurred two months before the trial date. On the trial date, when he entered pleas of not guilty, he stated that he was "absolutely" happy with his counsel. CCR at 438. If he still had problems with his attorney, that was the time to remind the trial court that he had wanted a new attorney, not years later in a habeas petition. By stating satisfaction with counsel, he made the very kind of end-run around the normal trial and appellate process prohibited by *Slayton*, and he cannot now be heard to complain when the court declines to consider the procedurally defaulted matter.

As for the court's failure to inquire about Wade's waiver of the right to present mitigating evidence, Wade has not offered any reason for his procedural default.

For the reasons stated above, these claims for trial errors will be dismissed.

### III. CONCLUSION

For the reasons discussed above, the court will grant the respondent's motion to dismiss.

Further, when issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell,* 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural

ruling is debatable and that the action states a debatable claim of the denial of a constitutional right.  *Gonzales v. Thaler*, 565 U.S. 134, 140–41 (2012).  Wade has not made such showings in this case, and a certificate of appealability will be denied.

An appropriate Order will be entered.

Entered: May 21, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge